# EXHIBIT A

Return Date: No return date scheduled
Hearing Date: 7/16/2021 9:30 AM - 9:30 AM
Courtroom Number: 2008
Location: District 1 Court
 Cook County, IL

FILED
3/18/2021 8:30 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2021CH01299

12618211

FILED DATE: 3/18/2021 8:30 AM 2021CH01299

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

HOOTERS OF AMERICA, LLC,

Plaintiff,

v.

ZURICH AMERICAN INSURANCE COMPANY
d/b/a AMERICAN GUARANTEE AND LIABILITY
INSURANCE COMPANY,

Defendant.

/

Case No.: 2021CH01299

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Hooters of America, LLC ("HOA"), for its complaint against Defendant, Zurich American Insurance Company d/b/a American Guarantee and Liability Insurance Company ("Zurich"), hereby alleges the following:

### INTRODUCTION

1.      This is an action for declaratory judgment, breach of contract, and under Section 155 arising out of HOA's claim for insurance coverage under an "all risk" property insurance policy sold by the Defendant, Zurich, to HOA that insures HOA's properties, business operations, and potential liability in connection with HOA's business operations.

2.      HOA is a business that operates restaurants all over the United States. HOA purchased an insurance policy from Zurich and made premium payments for the policy that, in the event of a catastrophe requiring a shutdown of business operations, would require Zurich to honor its contractual obligation to provide coverage.

1

FILED DATE: 3/18/2021 8:30 AM 2021CH01299

3.      In March 2020, such a catastrophe took place when HOA was forced to close and/or limit its business due to the COVID-19 pandemic and orders of civil authorities requiring it to shut down all operations.

## THE PARTIES

4.      Plaintiff, HOA is a limited liability company organized under Georgia law with its principal place of business at 1815 The Exchange SE, Atlanta, GA.

5.      Defendant, Zurich is an insurance company organized under the laws of the State of New York, with its principal place of business in Schaumburg, Illinois. Zurich is an insurance company engaged in the business of selling insurance contracts to commercial entities such as HOA from its headquarters located in Cook County, Illinois.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this justiciable matter in accordance with the Illinois Constitution and settled law.

7.      Venue is proper in this Court because Zurich's principal place of business is located in Cook County, Illinois.

8.      This Court has personal jurisdiction over Zurich because its principal place of business is located in Cook County, Illinois.

## FACTUAL BACKGROUND

**A.      Plaintiff Purchases Insurance Coverage from Defendant.**

9.      For the policy period of May 1, 2019 through May 1, 2020, Zurich issued its EDGE Policy, Policy Number ERP 0281537-01 to HOA (the "Policy"). *See* **Exhibit "1."**

2

10. The Policy is an all-risk policy insuring against, "direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property, at an Insured Location described in Section II-2.01 ...." *See* **Exhibit "1,"** Section 1.01 Insuring Agreement, EDGE-D-100-B (12/10).

11. The Policy insures all locations listed on the Schedule of Locations ("Covered Properties"). *See* **Exhibit "1,"** Section 2.01 Insured Location and Sections 2.02.01-2.01.03. HOA suffered damage to its property located at 418 SW Water Street, Peoria, Illinois 61602.

**B.** **The Coronavirus Pandemic.**

12. COVID-19 is a novel coronavirus that originated in Wuhan, China at the end of 2019 and rapidly spread around the world, infecting millions of people, including over 29 million Americans. Over 525,000 Americans have died due to COVID-19.

13. COVID-19 is a physical substance that can cause lethal illness. COVID-19 can be present outside the body in viral fluid particles. COVID-19 is highly contagious and easily communicable through droplets in the air and on surfaces.

14. The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. Shutdowns of the Insured Properties leading to financial losses also constitute direct physical losses, in addition to remediation efforts.

15. COVID-19 remains capable of being transmitted on a variety of inert physical surfaces for various periods of time. For example, reports issued by the National Institute of Health ("NIH") indicates that COVID-19 remains stable and transmittable in airborne aerosols for up to three hours, on copper for up to four hours, on cardboard for up to 24 hours, and on plastic and stainless steel for up to two to three days. Moreover, the COVID-19 pandemic has been exacerbated by the fact that the virus physically infects and stays on surfaces of some objects or materials for up to 28 days.

FILED DATE: 3/18/2021 8:30 AM 2021CH01299

3

FILED DATE: 3/18/2021 8:30 AM 2021CH01299

16.     The Center for Disease Control ("CDC") has issued guidance recommending people not to gather in groups larger than 10. Pursuant to CDC guidelines, people face increased danger of contracting COVID-19 in places where people congregate and are in close proximity to one another, and especially in indoor environments.

17.     COVID-19 has been transmitted in a variety of ways, including transmission (a) by way of human contract with surfaces and items of physical property; (b) by human-to-human contact and interaction, including places like bars and restaurants, retail stores, and hair and beauty salons, and the like; and (c) through airborne particles emitted into the air and even recirculated through air conditioning units.

18.     The presence of COVID-19 particles renders physical property unsafe and impairs its value, usefulness, and/or normal function, causing direct physical harm to property and resulting in direct physical loss and physical damage to property.

19.     The presence of COVID-19 particles and/or the presence of persons infected with COVID-19 or carrying COVID-19 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness, and/or normal function, and resulting in direct physical loss to and of the premises and property.

**C.      Relevant Policy Definition and Provisions at Issue.**

20.     In accordance with the all-risk nature of the Policy, Zurich agreed to pay for "direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property, at an Insured Location described in Section II-2.01...." *See* **Exhibit "1,"** Section 1.01 Insuring Agreement, EDGE-D-100-B (12/10).

4

FILED DATE: 3/18/2021 8:30 AM  2021CH01299

21.    The Policy defines a "covered cause of loss" as "[a]ll risks of direct physical loss of or damage from any cause unless excluded." *See* **Exhibit "1,"** Section 7.11, EDGE-100-B (12/10), page 39 of 44.

### Decontamination Costs Coverage

22.    The Policy includes coverage for Decontamination Costs from direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property and there is in force at the time of the loss any law or ordinance regulating Contamination due to the actual not suspected presence of Contaminant(s). *See* **Exhibit "1.,"** Section 5.02.07 Decontamination Costs.

23.    The Policy provides $250,000.00 for Decontamination Costs. *See* **Exhibit "1."**

### Time Element Losses Coverage

24.    The Policy insures HOA for Time Element losses:

> The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at an Insured Location. The **Suspension** must be due to direct physical loss of or damage to property (of the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at the **Location,** or as provided in Off Premises Storage for Property Under Construction Coverages.

> The Company will also pay for the actual Time Element loss sustained by the Insured, during the Period of Liability at other Insured Locations. The Time Element loss must result from the necessary **Suspension** of the insured's business activities at the other Insured Locations. Such other Location must depend on the continuation of business activities at the **Location** that sustained direction physical loss or damage caused by a **Covered Cause of Loss.**

*See* **Exhibit "1,"** Section 4.01.01, page 5 of 44.

5

FILED DATE: 3/18/2021 8:30 AM   2021CH01299

25.     The Policy defines "Suspension" as, "[t]he slowdown or cessation of the Insured's business activities; or as respects rental income that a part or all of the Insured Location is rendered untenantable." *See* **Exhibit "1,"** Section 7.56.01 and 7.56.02, page 44 of 44.

26.     Hence, the Policy covers HOA for its financial losses resulting from suspension of its operations for a cause of loss not excluded by the express terms of the Policy.

27.     The Policy does not include an exclusion for suspension of business operations as a result of a national Pandemic.

28.     The Policy does not include an exclusion for suspension of business operations resulting from government ordered shutdowns.

### Extra Expense Coverage

29.     Another type of coverage provided by the Policy is for "extra expense." *See* **Exhibit "1,"** Extra Expense, Section 4.02.03, page 7 of 44.

30.     Pursuant to the Extra Expense Coverage Form,

> The Company will pay for the reasonable and necessary Extra Expenses incurred by the Insured, during the Period of Liability, to resume and continue as nearly as practicable the Insured's normal business activities that otherwise would be necessarily suspended, due to direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy at a **Location.**

*Id.*

31.     Under the Policy, "Extra Expenses" is defined to mean "that amount spent to continue the Insured's business activities over and above the expenses the Insured would have normally incurred had there been no direct physical loss of or damage caused by a **Covered Cause of Loss** to Property of the type insurable under this policy at a **Location.** Extra Expense does not

6

include any Gross Earnings loss, the cost of permanent repair or replacement of property that has

suffered directly physical loss or damage, or expenses otherwise payable elsewhere in the Policy."

32. The Extra Expense Coverage Form does not contain any exclusion for viruses or

pandemics.

### Civil Authority Coverage

33. The Business Income Coverage Form (Excluding Extra Expense) also provides an

additional coverage for "Civil Authority:"

> The Company will pay for the actual Time Element loss sustained
> by the Insured, as provided by this Policy, resulting from necessary
> **Suspension** of the Insured's business activities at an Insured
> Location if the **Suspension** is caused by order of civil or military
> authority that prohibits access to the **Location.** That order must
> result from a civil authority response to direct physical loss of or
> damage caused by a **Covered Cause of Loss** to property not owned,
> occupied, leased or rented by the Insured or insured under this
> Policy and located within the distance of the Insured's Location as
> stated in the Declarations. The Company will pay for the actual
> Time Element loss sustained, subject to the deductible provisions
> that would have applied had the physical loss or damage occurred at
> the Insured Location, during the time the order remains in effect, but
> not to exceed the number of consecutive days following such order
> as stated in the Declarations up to the limit applying to his Coverage.

*See* **Exhibit "1,"** Section 5.02.03 Civil or Military Authority, page 11 of 44.

34. The COVID-19 pandemic and the related Closure Orders triggered the Time

Element, Extra Expense, and Civil Authority, coverages provided by the Policy.

**D.    The Closure Orders.**

35. The presence of COVID-19 has caused civil authorities throughout the country to

issue orders requiring the suspension of business at a wide range of establishments, including civil

authorities with jurisdiction over HOA's business (the "Closure Orders").

7

FILED DATE: 3/18/2021 8:30 AM   2021CH01299

36.     In response to the public health emergency caused by the COVID-19 pandemic, civil authorities across the United States, including the civil authorities with jurisdiction over each one of HOA's properties listed on the Schedule of Value of the Policy have issued Closure Orders restricting and prohibiting access to HOA's insured properties.

37.     Closure Orders entered by municipal and county governments throughout United States recognize that COVID-19 poses a threat to the loss of property. Closure Orders containing statements recognizing that COVID-19 causes business income loss and loss of property and property damage have been issued by county officials for the Properties subject to this action.

**E.     The Covered Cause of Loss.**

38.     HOA's business is considered a "non-essential business" pursuant to the Closure Orders.

39.     As a result of the COVID-19 pandemic and the Closure Orders, HOA was required to close their facilities and suspend its in-person workforce, thereby requiring it to cease its business operations. These fortuitous events, which meet the criteria of a "covered cause of loss," resulted in the presence of COVID-19 at the Covered Properties which, in turn, caused direct physical loss and resultant/ensuing damages to the Covered Properties (hereinafter the "Loss").

40.     In the beginning of March 2020, HOA became aware that some of its Covered Properties had been damaged by employees testing positive for COVID-19 on the premises. After that point, it became impracticable to operate HOA's business at those locations without immediately exposing the Covered Properties to hazardous human respiratory droplets. Any attempt to operate the business would immediately and necessarily result in the Covered Properties' exposure to the respiratory droplets of its staff, making the property unfit for occupation.

8

FILED DATE: 3/18/2021 8:30 AM    2021CH01299

41.     The Closure Orders caused direct physical loss to the Covered Properties that employees did not test positive for COVID-19.

42.     In an effort to mitigate its losses, HOA continued to operate its businesses while taking precautions to minimize its losses; however, the occupancy was very limited, also qualifying as physical loss under the Policy.

43.     Ultimately, the Closure Orders prohibited the public from accessing HOA's Covered Properties, thereby causing the total suspension of all its operations.

44.     HOA has incurred substantial Time Element losses and Extra Expense caused by: (i) the COVID-19 pandemic and the presence of hazardous respiratory droplets at or around several of HOA's Covered Properties, and (ii) the Closure Orders which prohibit access to HOA's Covered Properties.

45.     The Closure Orders of civil authorities prohibited access to HOA's Covered Properties, and the areas immediately surrounding HOA's Covered Properties, in response to dangerous physical conditions resulting from a covered cause of loss.

46.     As a result of prevention of direct ingress to and direct egress from the Covered Properties, HOA suffered a necessary interruption in business.

47.     Direct, resultant, and/or ensuing damages and/or loss of business income caused by the presence of COVID-19 which occurred as a result of the COVID-19 pandemic and Closure Orders are covered under the Policy.

48.     Direct, resultant, and/or ensuing damages and/or loss of business income caused by the presence of COVID-19 which occurred as a result of the COVID-19 pandemic and Closure Orders are not excluded from the Policy.

9

FILED DATE: 3/18/2021 8:30 AM   2021CH01299

49.     HOA's losses and expenses began on March 18, 2020, and continued through the expiration of the Policy.

50.     HOA's losses and expenses are not excluded from coverage under the Policy. Because the Policy is an all-risk policy and HOA has complied with its contractual obligations, HOA is entitled to payment for these losses and expenses.

**F.      Zurich's Denial of Coverage.**

51.     Consistent with the terms and procedures of the Policy, HOA submitted a claim for loss to Zurich under the Policy due to the presence of COVID-19 at several of the Covered Properties and the Closure Orders to the remaining Covered Properties.

52.     Through its adjustment of the claims, Zurich has been afforded the opportunity to fully inspect the Covered Properties upon request, investigate the cause of the Loss, and quantify the amount of the loss.

53.     Zurich chose not to inspect a single Covered Property under the Policy.

54.     In violation of the Policy's plain language and its own contractual obligations, Zurich denied HOA's Claim and refuses to pay for HOA's losses and expenses. A copy of Zurich's August 6, 2020, letter denying HOA's claims is attached as **Exhibit "2."**

55.     Specifically, in denying HOA's Claim, Zurich stated (1) the presence of COVID-19 virus does not constitute "direct physical loss or damage" to property; and (2) any damage to property would be excluded under the Policy's Contamination exclusion. *See* **Exhibit "2,"** page 2.

56.     Zurich is wrong, HOA suffered a "direct physical loss". Under Illinois law, HOA's Covered Properties being shutdown and/or limited constitutes a physical loss under the Policy. *See, In Re: Society Insurance Co., Covid -19 Business Interruption Protection Insurance*

10

FILED DATE: 3/18/2021 8:30 AM 2021CH01299

*Litigation,* 2021 WL 678109 (denying insurer's summary judgement asking the Northern District of Illinois to find no "direct physical loss" as a result of Covid-19 closures).

57.     Zurich is wrong, the Policy Contamination exclusion does not apply to HOA's claim.

58.     The Policy's Contamination exclusion states:

> **Contamination,** and any cost due to **Contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy.

*See* **Exhibit "1,"** Section 3.03.01.01, page 2 of 44.

59.     The Policy defines "Contamination" as "[a]ny condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, **Fungus**, mold or mildew. **Exhibit "1,"** Section 7.09, page 39 of 44.

60.     The Policy defines "Contaminant(s)" as "[a]ny solid, liquid, gaseous, thermal or other irritant, pollutant or contaminant including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste (including materials to be recycled, reconditioned or reclaimed) asbestos, ammonia, other hazardous substances, **Fungus** or **Spores**." **Exhibit "1,"** Section 7.09, page 39 of 44.

61.     HOA's Covered Properties were not suspended because of Contamination, HOA was not allowed to operate or invite others onto its Covered Properties because of various "stay at home" orders. HOA' Covered Properties were disposed. Dispossession is a form of loss.

62.     HOA suffered a "physical loss" as defined by the Policy.

FILED DATE: 3/18/2021 8:30 AM   2021CH01299

63.     Further, the Contaminants exclusion does not apply to the Time Element and/or the Extra Expense coverage forms.

64.     Zurich also could have excluded pandemic-related losses under the Time Element and/or Extra Expense Coverage Form or another endorsement to the Policy, as other insurers regularly do, but it did not.

65.     Because the Policy is all-risk and does not exclude HOA's losses, HOA's losses are covered up to the applicable limits of insurance.

66.     HOA has complied with all prerequisites, whether denominated conditions precedent, duties after loss, or otherwise, to receive benefits or proceeds under the Policy, or maintain the instant suit for the breach or declaration of the Policy; alternatively, Zurich has waived or never had standing to assert any prerequisites, whether denominated as conditions precedent, duties after loss, or otherwise.

### CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT

67.     HOA repeats and realleges Paragraphs 1–66 as if fully set forth herein.

68.     This is an action for declaratory judgment pursuant to 735 ILCS 5/2-701 (West 1996), referred to as the "Declaratory Judgment Act."

69.     HOA's Policy with Zurich is a contract under which Zurich was paid premiums in exchange for its promise to pay HOA's losses for claims covered by the Policy.

70.     HOA has complied with all applicable provisions of the Policy and/or those provisions have been waived by Zurich, or Zurich is estopped from asserting them.

12

FILED DATE: 3/18/2021 8:30 AM    2021CH01299

71.     Zurich has arbitrarily and without justification refused to reimburse HOA for losses incurred by it in connection with the covered Time Element losses related to the Closure Orders and/or Stay at Home Orders and the necessary interruption of its business stemming from COVID-19.

72.     An actual case or controversy exists regarding HOA's rights and Zurich's obligations under the Policy to reimburse HOA for the full amount of losses incurred by HOA in connection with the Closure Orders and the suspension of its business stemming from COVID-19.

73.     Zurich denied HOA's claim stating, "...the presence of COVID-19 virus does not constitute direct physical loss or damage to property" under the Policy. *See* **Exhibit "2,"** Zurich's August 6, 2020 Denial Letter.

74.     Zurich's denial is wrong. The Pandemic caused Closure Orders imposed a physical limit on HOA's Covered Properties leading to suspension of its operations: the restaurants were limited from using much of their physical space constituting a direct physical loss. *See also, In Re: Society Insurance Co. Covid -19 Business Interruption Protection Insurance Litigation,* 2021 WL 678109.

75.     Zurich's actions and positions taken demonstrate an actual, present, and practical need for declaration from this Court.

76.     This Court is permitted to determine the existence or non-existence of any right, duty, power, or privilege, or of any fact upon which the legal relationship between the parties depends.

77.     HOA is entitled to have this Court remove all doubts raised by Zurich concerning the application of the facts of the Claim to the Policy.

FILED DATE: 3/18/2021 8:30 AM 2021CH01299

78.     The declaration sought with regard to the instant controversy is of a justiciable nature, does not amount to an advisory decree, and will assist in the resolution of the controversy between the parties.

79.     Pursuant to the Declaratory Judgment Act, HOA seeks a declaratory judgment from this Court declaring the following:

a.      HOA's losses incurred in connection with the Closure Orders and the necessary interruption of its business stemming from the COVID-19 pandemic constitutes a "direct physical loss" under the Policy.

b.      Zurich is obligated to pay HOA for the full amount of the losses incurred and to be incurred, in connection with the covered business losses related to the Closure Orders, during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic;

c.      The Contamination exclusion does not apply to HOA's Claim; and

d.      Zurich must pay the Policy's limits for the Covered Properties where HOA's employees tested positive for COVD-19 necessitating closure under the Policy's Contaminants coverage.

## COUNT II - BREACH OF CONTRACT

80.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 79 as if fully set forth herein.

81.     HOA's Policy with Zurich is a contract under which Zurich was paid premiums in exchange for its promise to pay HOA's losses for claims covered by the Policy.

82.     In the Policy, Zurich agreed to cover property against all risks of physical loss or damage not otherwise excluded.

14

FILED DATE: 3/18/2021 8:30 AM   2021CH01299

83.     HOA has complied with all applicable provisions of the Policy and/or those provisions have been waived by Zurich, or Zurich is estopped from asserting them.

84.     The Closure Orders issued by Civil Authorities as a result of the COVID-19 pandemic also caused physical loss and/or physical damage to the remaining of HOA's Covered Properties.

85.     By denying coverage for any business losses and extra expense incurred by HOA in connection with the Closure Orders and the COVID-19 pandemic, Zurich has breached its coverage obligations under the Policy.

86.     Zurich knowingly and willfully breached its coverage obligations under the Policy to protect Zurich's financial interests in the wake of unanticipated insurance claims related to the COVID-19 pandemic.

87.     As a result of Zurich's breaches of the Policy, HOA has sustained, and continues to sustain, substantial damages for which Zurich is liable, in an amount to be established at trial.

### COUNT III - BREACH OF CONTRACT

88.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 87 as if fully set forth herein.

89.     HOA's Policy with Zurich is a contract under which Zurich was paid premiums in exchange for their promise to pay HOA's losses for claims covered by the Policy.

90.     In the Policy, Zurich agreed to cover property against all risks of physical loss or damage not otherwise excluded.

91.     The Policy includes coverage for Decontamination Costs from direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property and there is in force at the

15

time of the loss any law or ordinance regulating Contamination due to the actual not suspected presence of Contaminant(s). *See* **Exhibit "1.,"** Section 5.02.07 Decontamination Costs.

92. HOA has complied with all applicable provisions of the Policy and/or those provisions have been waived by Zurich, or Zurich is estopped from asserting them.

93. Many of HOA's Covered Properties suffered shutdowns as a result of COVID-19 being confirmed on premises through employee contacts.

94. HOA suffered damages in cleaning the properties and in business interruption as result of on-site employee confirmations.

95. Zurich failed to investigate any of these claims.

96. By denying coverage and not paying for the Decontamination Costs incurred by HOA in connection with the COVID-19 pandemic, Zurich has breached its coverage obligations under the Policy.

97. Zurich knowingly and willfully breached its coverage obligations under the Policy to protect Zurich's financial interests in the wake of unanticipated insurance claims related to the COVID-19 pandemic.

98. Indeed, Zurich never even investigated the Covered Properties for its Decontamination Costs and losses.

99. As a result of Zurich's breaches of the Policy, HOA has sustained, and continues to sustain, substantial damages for which Zurich is liable, in an amount to be established at trial.

## COUNT IV – SECTION 155 BAD FAITH CLAIM

100. Plaintiff re-alleges and incorporate by reference Paragraphs 1 through 99 as if fully set forth herein.

16

FILED DATE: 3/18/2021 8:30 AM   2021CH01299

101.   At the time of the loss, Zurich's internal claims policies, practices, and procedures included compliance with the regulations promulgated by the Illinois Director of Insurance within Part 919 of the Illinois Administrative Code as well as compliance with sections 154.5 and 154.6 of the Illinois Insurance Code.

102.   HOA is entitled to an award of reasonable attorneys' fees and taxable costs under section 155 of the Illinois Insurance Code by virtue of Zurich engaging in the following vexatious and unreasonable conduct:

(a)    failing to pay HOA amounts due under the insurance policy within a reasonable time;

(b)    failing to inspect any of the Covered Properties insured by the Policy before denying coverage for the losses;

(c)    misrepresenting what constitutes a "direct physical loss" under the terms of the Policy;

(d)    failing to investigate the Covered Properties for the presence of COVID-19 to pay under the Policy's Decontamination Coverage; and

(e)    misrepresenting the Decontaminants Coverage under the Policy.

## PRAYER FOR RELIEF

**WHEREFORE,** HOA respectfully requests that the Court:

A.    Enter a declaratory judgment in favor of HOA and against Zurich in the form provided in Count I, Paragraph 79.

B.    Enter a judgment on Count II in favor of HOA and against Zurich and award damages for breach of contract in an amount to be established at trial;

C.    Enter a judgement on Count III in favor of HOA and against Zurich and award damages for breach of contract in an amount to be established at trial;

17

FILED DATE: 3/18/2021 8:30 AM   2021CH01299

D.       Enter a judgement on Count IV under Section 155 in favor of HOA and against Zurich and award to HOA reasonable litigation expenses and attorneys' fees as consequence of Zurich's conduct;

E.       Award HOA pre- and post-judgment interest, to the extent allowable; and

F.       Any such other and further relief as this Court deems just and appropriate.

### **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 18, 2021.

Respectfully submitted,

By: /s/ *Larry E. Bache, Jr.*
Larry E. Bache, Jr.
Illinois Bar No. 6308520
**MERLIN LAW GROUP**
777 S. Harbour Island Blvd.,
Suite 950
Tampa, FL 33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692
Email: lbache@merlinlawgroup.com

James Constable, Esquire
**CONSTABLE LAW, P.A.**
139 6th Avenue South
Safety Harbor, Florida 34695
Telephone: (727) 797-0100
Facsimile: (727) 726-6917
Email: james@constable-law.com

18